UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. MANAFORT, Jr., and<br>RICHARD W. GATES III,<br><br>**Defendants** | Crim. No. 17-201-2 (ABJ) |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION
### TO DEFENDANT GATES' MOTION TO MODIFY RELEASE CONDITIONS

The United States of America, by and through Special Counsel Robert S. Mueller III, submits this memorandum in opposition to defendant Gates' motion to modify his conditions of release. *See* ECF#21. Gates seeks to be relieved of the electronic monitoring requirement in his current release conditions and to be permitted to "travel domestically and, on a limited basis, internationally." *Id.* at 1, 7. He argues, without detail or explanation, that the charges are not serious and that his lack of criminal history, lack of drug and alcohol problems, his mental fitness, and his family and community ties indicate that "he will not flee." *Id.* at 5-6. Of note, Gates makes no attempt to estimate his net worth, beyond saying that he has "limited assets that include only a single house." *Id.* at 5. That is, he fails to answer a central question relevant to the bail inquiry: the nature and extent of his assets.

For the reasons stated below and in its October 31, 2017 Memorandum in Support of Conditions of Release (ECF#14, hereinafter "Gov't Mem."), the government opposes the defendant's application. Gates constitutes a flight risk because of the nature and severity of the charges that he faces, which carry substantial statutory penalties and an estimated advisory Guidelines range of 121 to 151 months of imprisonment; because the evidence against him is

strong; and because his financial assets and ties abroad remain significant.

## GATES POSES A RISK OF FLIGHT, AND HIS PROPOSED BAIL PACKAGE DOES NOT SET CONDITIONS OR A COMBINATION OF CONDITIONS SUFFICIENT TO ENSURE HIS APPEARANCE

Gates' motion fails to meaningfully address any of the factors that are relevant under the Bail Reform Act, 18 U.S.C. § 3142(g). As set forth in the government's October 31 memorandum, analysis of those factors demonstrates that Gates poses a serious risk of flight and that conditions more restrictive than an unsecured bond and an admonition not to engage in criminal conduct are needed to reasonably assure his presence at trial.

1. *Nature and circumstances of the offense*. Gates offers no substantive response to the government's showing that the nature and circumstances of the charged crimes demonstrate a risk of flight. To the contrary, after reciting the charged offenses, Gates concludes that "the nature and circumstances of the alleged offense weigh strongly in favor of pretrial release." ECF#21 at 4. Nowhere does he address the case law establishing that the "nature" of an offense includes its severity and that, when flight risk is at issue, the severity of an offense is determined by reference to the possible sentence a defendant faces. *See* Gov't Mem. at 5-6. Nor does he acknowledge the statutory maximum penalties for the charged offenses here, which include a 20-year term for the money laundering conspiracy charged in Count 2 and a 10-year statutory maximum for the Title 31 FBAR offense charged in Counts 7, 8, and 9. *See id.* Gates also does not contest—or, more accurately, he does not address—the government's estimated Guidelines range of level 32, or the corresponding range of 121 to 151 months' imprisonment that he faces if convicted. *Id.* at 6.

Gates does attempt to distinguish, in a footnote, two of the government's cited cases. ECF#21 at 2 n.2 (addressing *United States v. Saani*, 557 F. Supp. 2d 97 (D.D.C. 2008), and *United States v. Anderson*, 384 F. Supp. 2d 32 (D.D.C. 2005)). He seizes on the facts that the defendant in *Saani* was a dual citizen, while the defendant in *Anderson* "engaged in activity after the

execution of a government search warrant that indicated an intent to flee." *Id.* But those are facts that led the courts in those cases to order pretrial detention, a measure the government is not seeking here. Gates has no response to the threshold conclusion, reached in both cases, that offenses carrying significant penalties and demonstrating a defendant's familiarity with sophisticated international financial transactions evince a flight risk. *See Saani*, 557 F. Supp. 2d at 98-99 (explaining relevance to flight risk of the defendant's being charged with "a crime of deception" that showed his "ability to support himself overseas" and his "alleged access to funds in foreign bank accounts"); *Anderson*, 384 F. Supp. 2d at 35-36 (finding flight risk based in part on defendant's familiarity with commercial law of other countries and his "sophistication in arranging international financial transactions and in moving money across borders").

    2. *Weight of the evidence*. With respect to the "weight of the evidence," Gates proffers no new facts and develops no argument beyond the sole assertion that he "vehemently disputes the charges, and eagerly looks forward to defending himself at trial." ECF#21 at 4. He does not address the allegations set forth in the indictment or dispute that the strength of the evidence on the two false and misleading statements related charges (Counts 11 and 12) is borne out by Chief Judge Howell's October 2, 2017 ruling, which addressed the issue of whether Gates (and Manafort) made false and misleading statements to the Department of Justice through their counsel as recently as February. *See* Gov't Mem. 8-9. Gates also does not comment on the existence of foreign bank records in his name, or his control over millions of dollars through those accounts. In short, he refutes in no way the government's showing that the weight of evidence against him is strong.

    3. *History and characteristics of the defendant*. Gates spends most of his motion addressing his "history and characteristics," a factor that is relevant to bail conditions. *See* 18

3

U.S.C. § 3142(g)(3).  In that regard, Gates emphasizes his family ties and acknowledges the relevance of "financial resources" to the bail calculus.  But he provides no facts to substantiate his statement about those resources.  Indeed, Gates' description of his assets as "limited" (ECF#21 at 5) is contradicted by available documentary evidence.  *See* Gov't Mem. at 11-12.  For example:

- In a February 2016, Gates applied for and received a $3 million line of credit. As part of that application Gates listed his and his wife's net worth as $30,000,000, and his liquid net worth as $25,000,000; both applicants signed this application.

- In June 2017, Gates wrote an email to his financial advisor seeking to transfer $73,000 and stating that "[o]nce it hits I will end up with about $2m give or take a few bucks."

- In August, 2017, Gates' wife opened a brokerage account and, approximately two weeks later, more than $1 million was transferred from a joint account held by the two. As of September 30, 2017, Gates and his wife had at least $1.9 million dollars held with a financial adviser.

- In September 2017, Gates transferred $565,540 to a general contractor who is doing work on his home in Richmond;  since August 2015, Gates has paid approximately $1.38 million to this general contractor; and

- Gates presently has signatory authority over an additional $750,000 in accounts at various entities with which he is associated.

Finally, in evaluating flight risk, the Court may wish to consider one development relating to Gates' passports.  On November 2, Gates' recently retained counsel notified the government that Gates was in possession of a second passport.  Counsel represented that Gates had checked to make sure he had no applications for passports pending and found that he had recently received an additional passport.  This occurred four days after the government had notified Gates that it had a warrant for his arrest and offered him the opportunity to self-surrender, on the condition (among others) that he turn over any and all passports within an hour.  His counsel represented that he would do so, and thereafter the FBI took possession from Mr. Gates of 1 passport.  At his initial court appearance on October 30, Magistrate Judge Robinson asked Gates, through his court-appointed attorney, about the "the status of [his] passport," to which his attorney responded, "[i]t

is in the possession of the Government. It was turned in yesterday." Oct. 30, 2017 Tr. 14. And Gates was reminded of the passport issue minutes later, when Magistrate Judge Robinson instructed him on the conditions of his bail, which included an instruction that he "may have no passport in [his] possession or make application for a passport while this case is pending." *Id.* at 21.

Gates' recent possession of multiple passports lends further support to the government's position that significant conditions of release are necessary to reasonably assure his continued appearances.

\* \* \* \* \* \*

In short, Gates provides neither facts nor law that supports his motion to modify his release conditions. The Court should deny that motion and instead continue the current conditions. The government remains committed to reviewing any future applications that the defendant will make, which should include financially responsible sureties and/or property to secure the bond.

                                                                           Respectfully submitted,

                                                                           ROBERT S. MUELLER III
Special Counsel

Dated: November 3, 2017            By:    /s/_____
                                                         Andrew Weissmann
                                                        Greg D. Andres
                                                        Kyle R. Freeny
                                                       (202) 616-0800