# EXHIBIT A

HC4PBROC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                    16 CR 436 (KMW)

STEVEN BROWN,

          Defendant.

------------------------------x

                                      New York, N.Y.
                                      December 4, 2017
                                      11:50 a.m.

Before:

                  HON. KIMBA M. WOOD,

                              District Judge

                     APPEARANCES

JOON H. KIM,
    Acting United States Attorney for the
    Southern District of New York
KATHERINE REILLY
NOAH SOLOWIEJCZYK
    Assistant United States Attorneys

WALTER S. MACK, JR.
DAVID RIVERA
    Attorneys for Defendant

1         (In open court)

2         (Case called)

3         THE COURT:  Good morning.  Please have a seat.

4         MS. REILLY:  Good morning, your Honor.  Catherine
Reilly and Noah Solowiejczyk for the government.

6         THE COURT:  Good morning.

7         MR. MACK:  Good morning, your Honor.  Walter Mack and
David Rivera, with Steven Brown, who is sitting to my left.

9         THE COURT:  Okay.  Thank you.  Mr. Mack, I have your
letter dated November 30th, actually, affirmation, and I
understand the position you're taking.  It would not take much
more time for me to go through the usual Curcio questions, and
I'm going to do it, against the infinitesimal chance that there
would emerge a conflict sometime down the road.

15         MR. MACK:  I understand that, your Honor.  I had one
thing I did want to raise, if possible, beforehand.  I think
you could tell from my affirmation that I anticipated that that
was likely, and I recognize that you want to avoid any risk
going forward.  But I do want to at least indicate what --
there has been a tremendous media storm as a result of a letter
the government sent, which sets forth information in great
detail about certain counsel and, basically, data, which we're
quite confident that if it came anywhere, it came from
Mr. Williams who we cannot respond to in any way, nor do we
wish to today.

1          But the reality is that the government may be sharing
2  with the SCO.  We don't know what Mr. Williams' information is.
3  We have gone, as best we can, trying to anticipate what the
4  concerns are, and those are reflected in the affirmation.
5          It seems unfair to us when we're under a protective
6  order that we cannot discuss information that we're getting in
7  production, which at least we would have thought about
8  responding to, and yet, Mr. Williams must be providing, or
9  somebody is providing information about specific accounts,
10 specific businesses, things of that nature, and we cannot
11 respond.
12         Had we thought about responding, because we're under a
13 protective order, but having had a lot of experience with
14 Curcio hearings in my years here, usually Curcio hearings are a
15 matter of very short, hey, there could be a conflict, this is
16 the general nature of it, and the Court decides what to do.
17 Here, we're getting very specific information in footnotes
18 about accounts and what have you probably from Mr. Williams
19 which we cannot respond to because of the protective order in
20 the information that we're getting.
21         I don't think we would respond, to be perfectly
22 honest, but it seems somewhat unfair to us, and I know
23 Mr. Brown, who's flown here last night, he was here on the
24 redeye, basically to be hammered.  He's had many press
25 inquiries.  We've had many press inquiries.  I have imposed my

own gag order on him.  We are not commenting on the press at any time.

        Judge Jackson in DC has imposed a gag order on us, and I actually -- we welcome the Court's inquiry here.  It's a long way of saying, but it seems somewhat unfair that we are prevented from saying anything, and we don't want to talk to the press --

        THE COURT:  May I take a look at the document you're looking at?

        MR. MACK:  I'm looking at the letter to you of November 20, and it was filed on ECF.  It's -- first of all, we get Mark Brown, Steven's brother, who is trying to do a good deed for Mr. Gates, hammered in a footnote and the SCO.  I'd rather hand it up.  I have a marked copy.  If that's available, it's dated November 20, and it's document 113 in ECF.

        THE COURT:  Oh, I see.  You're referring to the Curcio?

        MR. MACK:  The Curcio letter.

        THE COURT:  Okay.  Let me just review it quickly.  It seems to me that the level of detail in the government's letter is of use to the Court to explain to me why I should go through the -- I can't find the right adjective for what I think of Curcio hearings, but I think they are generally toothless.  So it tells me why the government believes there is potential for overlap.  You think this was just intended for the press?

1   MR. MACK: I don't want to accuse the government of
2   that, your Honor. I mean, my reality is that this could have
3   been done in a lot less way that -- I can tell you I've had at
4   least 20 calls from press asking. There's no way that we can
5   comment in this case without being accused of violating Judge
6   Jackson's order in DC one way or the other.
7   And it just seems to me that we are very -- given the
8   attention of the media to these two cases, I would generally
9   ask that if there were things that could -- and this certainly
10  has -- that there are ways to accomplish the Court's goals here
11  without further inciting the media's attention, and this
12  certainly has.
13  Mr. Brown has been told by me, and to his great
14  credit, he is not commenting. We've imposed a gag order here,
15  but basically it is a situation, there's a lot of attention now
16  focused on him that never was before, with respect to the
17  Ukraine. I mean, we don't know what the government is going to
18  do. I mean, in both cases we've been told that there may be a
19  superseder. We don't know what's happening. We're in a
20  situation that is very difficult under the current
21  circumstances to articulate exactly what's the conflict that
22  we're being asked to deal with.
23  THE COURT: Well, as you know, every Curcio script
24  explains that man can't possibly now know all possible
25  conflicts down the road.

1           MR. MACK:  And that's why we -- Mr. Brown has been
2    counseled as he has, and is prepared today to respond to the
3    Court's questions.
4           THE COURT:  Okay.  Does the government want to be
5    heard at all?
6           MS. REILLY:  No.  Thank you, your Honor.
7           THE COURT:  Okay.  I'll go through the questions.
8           Mr. Brown, could you please stand and raise your right
9    hand.
10          THE DEFENDANT:  Yes, ma'am.
11          THE COURT:  Do you solemnly swear that the answers you
12   give to my questions today will be the truth, the whole truth
13   and nothing but the truth, so help you God?
14          THE DEFENDANT:  Yes, your Honor.
15          THE COURT:  How old are you?
16          THE DEFENDANT:  I'm 47.  I'll be 48 next month.
17          THE COURT:  Okay.
18          THE DEFENDANT:  Except I'll -- I'm 47.  I'll be 48 in
19   January.
20          THE COURT:  It becomes harder to remember as time
21   goes, I know.  How far did you go in school?
22          THE DEFENDANT:  I was a licensed school teacher in the
23   State of Illinois.
24          THE COURT:  Are you currently under the care of a
25   doctor for any condition?

Case 1:17-cr-00201-ABJ   Document 75-1   Filed 12/05/17   Page 8 of 16      7
HC4PBROC

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  In the past 24 hours, have you had any
 3    alcohol or taken any drugs or pills of any kind?
 4              THE DEFENDANT:  I'm required, your Honor, to take
 5    unfortunately -- unfortunately, I'm required to take Ativan in
 6    the morning.
 7              THE COURT:  Okay.  Is your mind clear today?
 8              THE DEFENDANT:  Yes, ma'am.
 9              THE COURT:  Does that medicine interfere with your
10    ability to understand what's happening here?
11              THE DEFENDANT:  No, your Honor.
12              THE COURT:  Are you currently represented by Mr. Mack?
13              THE DEFENDANT:  Yes, your Honor.
14              THE COURT:  Have you been satisfied with his
15    representation of you so far in this case?
16              THE DEFENDANT:  Yes, your Honor.
17              THE COURT:  Has he informed you that he represents a
18    defendant in another criminal case, Richard Gates?
19              THE DEFENDANT:  Yes.  He informed me, and upon his
20    informing me, he asked me to seek an independent lawyer's
21    advice and recommendation, which I sought about three or four
22    independent people's advice.
23              THE COURT:  You may find it easier to sit.
24              THE DEFENDANT:  May I?
25              THE COURT:  You may sit, and bring the microphone
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  under your chin.  You get feedback if you're too close to it.

2  How long have you been aware of this issue, this
3  possible conflict?

4  THE DEFENDANT:  I would say from the day Mr. Mack
5  contacted me that the government was filing a motion, and I
6  didn't -- in my own view, didn't see a conflict.

7  THE COURT:  Okay.  If you could project your voice, it
8  will be easier for the court reporter.

9  THE DEFENDANT:  I apologize.  Is that better?

10  THE COURT:  Yes, much.

11  THE DEFENDANT:  Okay.  From the day the government
12  advised Mr. Mack that they were filing a motion, he contacted
13  me and I never saw a conflict, and I have disclosed to Mr. Mack
14  that I did seek independent counsel.  I also disclosed to
15  Mr. Mack that after speaking with him, I would be happy to sign
16  any waiver of conflict, although nobody I spoke to could see a
17  conflict.

18  THE COURT:  One of the reasons for going through this
19  exercise, as I just mentioned to Mr. Mack, which already told
20  you, I'm sure, the reason for this, even though you've had
21  advice from more than one lawyer about a potential conflict,
22  it's impossible to know today exactly where an investigation
23  will lead and turn up.  Unless you're omniscient, you know,
24  it's not possible, and that's my concern.  So allow me.

25  THE DEFENDANT:  Yes, ma'am.

1   THE COURT:  How much time have you spent discussing
2   this issue with Mr. Mack?
3   THE DEFENDANT:  No less than six hours.
4   THE COURT:  Do you understand that he is required, by
5   his duty of loyalty, to serve the best interests of Mr. Gates,
6   as well as your best interests?
7   THE DEFENDANT:  Yes, your Honor.
8   THE COURT:  Do you understand that Mr. Mack cannot use
9   any information he obtained from Mr. Gates while representing
10  you in this matter?  I'll give you an example.  If Mr. Gates
11  had some information that would be useful in your defense, and
12  if he stated those facts to Mr. Mack, Mr. Mack would not be
13  allowed to use that in your case.
14  THE DEFENDANT:  Yes.  I understand, your Honor.
15  THE COURT:  More specifically, do you understand that
16  if you proceed to trial, Mr. Mack will not be able to use any
17  information he obtained from Mr. Gates in cross-examining any
18  witnesses called by the government?
19  THE DEFENDANT:  Yes.  I understand, your Honor.
20  THE COURT:  Additionally, if Mr. Gates were to become
21  a witness for the government in this case, and if he were
22  called to testify against you, Mr. Mack would be limited in his
23  ability to ask questions on cross-examination that could be
24  damaging to Mr. Gates' credibility and favorable to your
25  defense.  This is just another example.

1        THE DEFENDANT:  Yes.  I understand that.
2        THE COURT:  Do you understand that if Mr. Gates is
3   called by the government to testify at a trial in your case,
4   you might have to retain another attorney, not associated with
5   Mr. Mack's firm, to cross-examine Mr. Gates?
6        THE DEFENDANT:  Yes.  I understand, your Honor.
7        THE COURT:  Do you understand that Mr. Mack might be
8   prohibited from asking Mr. Gates questions about facts that he
9   learned in confidence while representing Mr. Gates?
10       THE DEFENDANT:  Yes.  I understand, your Honor.
11       THE COURT:  Do you understand that if you continue to
12  be represented by Mr. Mack, he cannot advise or help you in
13  doing anything that would hurt Mr. Gates, even if it is in your
14  best interest to do so?
15       THE DEFENDANT:  I understand, your Honor.
16       THE COURT:  Do you understand that Mr. Mack cannot
17  help you in providing assistance to the government that might
18  hurt Mr. Gates, even if it turns out that doing so might be in
19  your best interest?
20       THE DEFENDANT:  Yes.  I understand, your Honor.
21       THE COURT:  Do you understand that Mr. Mack may
22  refrain from making certain arguments regarding the evidence in
23  this case, even though such arguments may be beneficial to you,
24  because of his representation of Mr. Gates?
25       THE DEFENDANT:  Yes.  I understand that.

1    THE COURT:  Do you understand that the greatest danger
2 to you is that there may be a way in which Mr. Mack's
3 representation of you will be impaired by his representation of
4 Mr. Gates but that that is not currently foreseeable?
5    THE DEFENDANT:  Yes.  I understand, your Honor.
6    THE COURT:  Do you understand that the potential
7 conflict already has existed throughout the time that Mr. Mack
8 has represented you?  I call it "potential."
9    THE DEFENDANT:  Yes.  I understand, your Honor.
10    THE COURT:  Could you tell me in your own words what
11 is your understanding of the potential conflicts of interest
12 arising in this situation?
13    THE DEFENDANT:  Your Honor, from my understanding, I
14 don't view a conflict of interest, but if a random conflict
15 we're to exist, I've advised Mr. Mack, after speaking with
16 independent counsel, that I'll be pleased to sign a waiver of
17 conflict.
18    THE COURT:  I would urge you not to feel bound by
19 that.  You shouldn't foreclose any options.
20    Do you understand that in every criminal case,
21 including this one, the defendant is entitled to assistance of
22 counsel whose loyalty to him is undivided, who is not subject
23 to any factor that might in any way intrude upon an attorney's
24 loyalty to interests?
25    THE DEFENDANT:  Yes.  I understand that.

1             THE COURT:  In other words, do you understand that you
2    are entitled to attorneys who have only your interest in mind,
3    not the interest of any other client?
4             THE DEFENDANT:  Yes.  I do understand that.
5             THE COURT:  Have you received any inducements,
6    promises or threats with regard to your choice of counsel in
7    your case?
8             THE DEFENDANT:  Absolutely not, your Honor.
9             THE COURT:  You've indicated that you've consulted
10   with attorneys other than Mr. Mack about the dangers to you of
11   this potential conflict of interest; is that correct?
12            THE DEFENDANT:  That is accurate, your Honor.
13            THE COURT:  All right.  Are they attorneys from law
14   firms that are not connected to Mr. Mack?
15            THE DEFENDANT:  I'm sorry, somebody coughed.
16            THE COURT:  Are those attorneys with whom you
17   consulted, are any of them in any partnership or law firm with
18   Mr. Mack?
19            THE DEFENDANT:  There's no affiliation to Mr. Mack.
20            THE COURT:  Okay.  I know you understand this, but do
21   you understand that you have a right to consult with an
22   attorney free from any conflict of interest about this issue,
23   and that I will give you an opportunity to do that, if you'd
24   like to do that, from here on out?
25            THE DEFENDANT:  Yes.  I understand, your Honor.

1    THE COURT:  Okay.  Do you wish to have any additional
2 time to consult with independent counsel?
3    THE DEFENDANT:  No.  Thank you, your Honor.
4    THE COURT:  Okay.  What attorneys did you speak with,
5 the independent ones?
6    THE DEFENDANT:  I'm not sure --
7    MR. MACK:  Your Honor, I actually discussed this issue
8 with Mr. Brown before coming here, and one thing is absolutely
9 certain, that every name that surfaces in the course of either
10 of these cases, that individual -- I can tell you from the
11 Gates case, a number of people who wanted to help Mr. Gates,
12 they were surrounded by press.  So I don't think he has any
13 problem doing so, but we would like to try to avoid those names
14 being presented far and wide.
15    THE COURT:  I'll skip that question.
16    MR. MACK:  Thank you, your Honor.
17    THE COURT:  Did the attorneys with whom you talked,
18 the independent ones, did they thoroughly explain to you the
19 potential effects or problems associated with Mr. Mack's
20 restrictions on his representation of you?
21    THE DEFENDANT:  They thoroughly went through it with
22 me.
23    THE COURT:  May I ask you, are you hard of hearing?
24    THE DEFENDANT:  Yes.
25    THE COURT:  In your future appearances, we will have a

1     headset that will amplify what is said in court, making it all
2     easier for you.
3                THE DEFENDANT:  Thank you, your Honor.
4                THE COURT:  If you aren't given a headset when you
5     walk in, please mention it to my deputy.
6                THE DEFENDANT:  Thank you, your Honor.
7                THE COURT:  Are you satisfied with the representation
8     that the independent attorneys gave you?
9                THE DEFENDANT:  Yes, your Honor.
10               THE COURT:  After considering everything I've said
11    today about the ways in which Mr. Mack's representation of
12    Mr. Gates may adversely effect your defense, do you believe
13    that it is in your best interests to continue with Mr. Mack as
14    your attorney?
15               THE DEFENDANT:  Yes.  I do, your Honor.
16               THE COURT:  And is that your wish?
17               THE DEFENDANT:  Yes.  It is, your Honor.
18               THE COURT:  Do you understand that by choosing to
19    continue with Mr. Mack as your attorney, you are waiving your
20    right to be represented by an attorney who has no potential
21    conflict of interest?
22               THE DEFENDANT:  Yes.  I understand that, your Honor.
23               THE COURT:  Do you understand that if you proceed with
24    Mr. Mack as your attorney, you will not be able to claim later
25    on that you were prejudiced in any way because of his

1  restrictions of his representation on you?
2            THE DEFENDANT:  Yes.  I understand that, your Honor.
3            THE COURT:  Are you knowingly and voluntarily waiving
4  your right to conflict-free representation?
5            THE DEFENDANT:  Yes.  I do, your Honor.
6            THE COURT:  Do you waive any post-conviction argument,
7  on appeal or otherwise, that by virtue of Mr. Mack's
8  representation of Mr. Gates, you were denied effective
9  assistance of counsel by Mr. Mack?
10           THE DEFENDANT:  Yes.  I understand that, your Honor.
11           THE COURT:  Is there anything I've said that you would
12 like to have me explain further?
13           THE DEFENDANT:  No.  Thank you, your Honor.
14           THE COURT:  Okay.  Would anyone like to raise anything
15 else?
16           MS. REILLY:  Nothing from the government, your Honor.
17           THE COURT:  All right.  I find that Mr. Brown has
18 knowingly waived his right to completely independent counsel.
19           Thank you very much.  We're adjourned.
20           (Adjourned)